**No. 21-2040**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**VDPP, LLC,**

*Plaintiff-Appellant,*

**v.**

**VIZIO, INC.,**

*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, CASE NO. 8:20-cv-00030-JVS-KES
JUDGE JAMES V. SELNA, DISTRICT JUDGE PRESIDING

# [CORRECTED] BRIEF OF DEFENDANT-APPELLEE VIZIO, INC.

CHARLES S. BARQUIST
**MASCHOFF BRENNAN**
300 South Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (949) 202-1900

ERYNN L. EMBREE
**MASCHOFF BRENNAN**
100 Spectrum Center Dr., Suite 1200
Irvine, CA 92618
Telephone: (949) 202-1900

*Attorneys for Defendant-Appellee*

OCTOBER 29, 2021

**U.S. Patent No. 9,699,444, Claims 1 and 27**

1. An apparatus comprising:

a storage adapted to:

store one or more image frames; and

a processor adapted to:

obtain a first image frame from a first video stream;

expand the first image frame to generate a modified image frame, wherein the modified image frame is different from the first image frame;

generate a bridge frame, wherein the bridge frame is a non-solid color, wherein the bridge frame is different from the first image frame and different from the modified image frame;

blend the modified image frame with the bridge frame to generate a blended modified image frame; and

display the blended modified image frame.

26. An apparatus comprising:

a storage adapted to:

store one or more image frames; and

a processor adapted to:

obtain a first image frame from a first video stream;

generate a modified image frame by performing at least one of expanding the first image frame, shrinking the first image frame, removing a portion of the first image frame, stitching together the first image frame with a second image frame, inserting a selected image into the first image frame, and reshaping the first image frame,

wherein the modified image frame is different from the first image frame;

generate a bridge frame, wherein the bridge frame is a solid color, wherein the bridge frame is different from the first image frame and different from the modified image frame;

display the modified image frame; and

display the bridge frame.

27. The apparatus of claim 26, wherein the bridge frame is black.

**U.S. Patent No. 9,948,922, Claim 2**

1. An apparatus comprising:

a storage adapted to:

store one or more image frames;

a processor adapted to:

obtain a first image frame and a second image frame from a first video stream;

generate a first modified image frame by expanding the first image frame, wherein the first modified image frame is different from the first image frame;

generate a second modified image frame by expanding the second image frame, wherein the second modified image frame is different from the second image frame;

generate a bridge frame, wherein the bridge frame is a solid color, wherein the bridge frame is different from the first image frame and different from the second image frame;

display the first modified image frame;

display the bridge frame; and

display the second modified image frame.

2. The apparatus of claim 1, wherein the bridge frame is black.

**U.S. Patent No. 10,021,380, Claim 6**

6. An apparatus comprising:

a storage adapted to:

store a sequence of image frames; and

a processor communicably coupled to the storage and adapted to:

obtain from said storage a first image frame associated with a first chronological position in the sequence image frames and a second image frame associated with a second chronological position in the sequence of image frames;

expand the first image frame to generate a modified first image frame, wherein the modified first image frame is different from the first image frame;

expand the second image frame to generate a modified second image frame, wherein the modified second image frame is different from the second image frame;

combine the modified first image frame and the modified second image frame to generate a modified combined image frame, the modified combined image frame having first and second opposing sides defining a first dimension and third and fourth opposing sides defining a second dimension; and

display the modified combined image frame.

**CERTIFICATE OF INTEREST**

Counsel for the appellee certifies the following:

The full name of each party represented by me is:

VIZIO, Inc.

There are no other real parties in interest.

The party represented by me is a wholly owned subsidiary of the publicly traded entity VIZIO Holding Corp.

The names of all law firms, partners, and associates that have not entered an appearance in the appeal and appeared for the party in the lower tribunal or are expected to appear in this court are:

Jared J. Braithwaite, formerly with Maschoff Brennan, now with Foley & Lardner, LLP
Lee C. Cheng, formerly with Maschoff Brennan, now with Buchalter PC

The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

None.

/ / /

/ / /

/ / /

Organizational Victims and Bankruptcy Cases. Information required under Fed. R. App. P. 26.1(b) and 26.1(c). Fed. Cir. R. 47.4(a)(6):

None.

Dated: October 29, 2021

*/s/ Charles S. Barquist*
Charles S. Barquist

# TABLE OF CONTENTS


U.S. Patent No. 9,699,444, Claims 1 and 27 .................................................... i

**U**.S. Patent No. 9,948,922, Claim 2 ............................................................ ii

**U.**S. Patent No. 10,021,380, Claim 6 ........................................................... iii

CERTIFICATE OF INTEREST ......................................................................... iv

STATEMENT OF RELATED CASE ................................................................. ix

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................1

STATEMENT OF THE CASE ............................................................................2

SUMMARY OF THE ARGUMENT ...................................................................5

ARGUMENT .......................................................................................................6

I. The district court correctly concluded based on intrinsic evidence that the "storage" and "processor" claim terms were means-plus-function terms that lacked sufficient disclosure of structure, rendering them indefinite. .................................................................................................6

   A. The terms "storage" and "processor" are generic computer terms that do not convey specific structure for performance of the recited functions. ..............................................................................6

II. The district court did not impose a burden on VDPP to provide expert testimony .........................................................................................................17

CONCLUSION ..................................................................................................18

CERTIFICATE OF SERVICE ...........................................................................19

CERTIFICATE OF COMPLIANCE ..................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008) ....................................14, 15

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
No. 09–290, 2010 WL 3937157 (W.D. Pa. Oct. 1, 2010)....................12

*In re Certain Rubber Antidegradants*,
No. 337-TA-533, 2008 WL 1727623 (Int'l Trade Comm. 2008) ...............12

*Eli Lilly and Co. v. Teva Pharmaceuticals Int'l GmbH*,
8 F.4th 1331 (Fed. Cir. 2021) .........................................6

*Farstone Tech., Inc. v. Apple Inc.*,
2015 WL 5898273 (C.D. Cal. Oct. 8, 2015)................................7

*GoDaddy.com, LLC v. RPost Commc'ns Ltd.*,
No. CV-14-00126-PHX-JAT, 2016 WL 212676 (D. Ariz. Jan. 19, 2016), *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017) ..............................7

*Goldenberg v. Cytogen, Inc.*,
373 F.3d 1158 (Fed. Cir. 2004) .......................................12

*HTC Corp. v. IPCom GmbH & Co., KG*,
667 F.3d 1270 (Fed. Cir. 2012) ....................................7, 15

*IQASR LLC v. Wendt Corp.*
825 Fed. Appx. 900 (Fed. Cir. 2020)...................................17

*Konami Gaming, Inc. v. Marks Studios, LLC*,
No. 2:14-cv-01485, 2017 WL 3174905 (D. Nev. Jul. 25, 2017) ...........15, 16

*Nevro Corp. v. Boston Scientific Corp.*,
955 F.3d 35 (Fed. Cir. 2020) ......................................13, 14

*Noah Systems, Inc. v. Intuit, Inc.*,
675 F.3d 1302 (Fed. Cir. 2012) ........................................6

*Rain Computing, Inc. v. Samsung Electronics America, Inc.*,
989 F. 3d 1002 (Fed. Cir. 2021), *cert. denied*, 2021 U.S. LEXIS 5203 (Oct. 12, 2021) .......... 16

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) .......... *passim*

*Zeroclick, LLC v. Apple Inc.*,
891 F.3d 1003 (Fed. Cir. 2018) .......... 4, 9, 10

**Statutes**

35 U.S.C. § 112 .......... 6, 13, 18

## STATEMENT OF RELATED CASE

There is no other appeal in or from the same civil action in the trial court that was previously before this or any other appellate court. There is no other case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in this appeal.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did the district court err when it construed the following claim terms as means-plus-function terms and found that the patents-in-suit did not disclose sufficient structure for performance of the claimed functions, rendering the terms indefinite: "a storage adapted to store one or more image frames"; "a storage adapted to store a sequence of image frames"; "a processor adapted to [perform the recited functional limitations]"; and "a processor communicably coupled to the storage and adapted to [perform the recited functional limitations]."

2. Did the district court err when it found that plaintiff-appellant VDPP did not provide expert testimony regarding the ordinary meanings of the terms at issue.

## STATEMENT OF THE CASE

Plaintiff-appellant VDPP alleged below that VIZIO televisions infringed three related U.S. Patents – Nos. 9,699,444; 9,948,922; and 10,021,380. VDPP's infringement contentions are limited to claims 1 and 27 of the '444 Patent, claim 2 of the '922 Patent, and claim 6 of the '380 Patent. The issues on this appeal concern the district court's construction of certain claim terms as means-plus-function terms, finding that in the context of the asserted claims the terms "storage" and "processor" "are surrogates for means terms for the performance of their recited functions" and that there was insufficient disclosure of corresponding structure, rendering the claims indefinite as a result. VDPP also challenges the district court's statement that VDPP did not present expert evidence regarding the asserted ordinary meaning of the claims at issue. (Appellant's Br. 14.)

Each of the asserted patents claims priority to a provisional patent application filed over 20 years ago on January 23, 2001, and to the first non-provisional patent application, which resulted in U.S. Patent No. 7,030,902. The '902 Patent named a single inventor, Kenneth Jacobs, and is entitled "Eternalism, a Method for Creating an Appearance of Sustained Three-Dimensional Motion-Direction of Unlimited Duration, Using a Finite Number of Pictures." This title aptly describes the asserted patents, which are directed to the presentation of optical illusions such as the illusion of 3D images using different images provided

to each eye of a viewer, or the illusion of continuous movement for stationary pictures using different images – an illusion that is referred to by the patents as "Eternalism." (Appx168-169 ('444, col. 1:47-56; 4:31-57).)

Despite claiming priority to the January 23, 2001 provisional application, various material was added to the disclosure of the asserted patents through continuation-in-part applications naming a second co-inventor, as well as through the addition of new matter in continuation applications – even though such additions are improper. Notably, the words "processor" and "storage" did not appear in the original provisional application. (Appx639-684.) The idea of adapting a computer processor and storage to create illusions was first added in a continuation application filed in 2015 that matured into U.S. Patent No. 9,426,452, the immediate predecessor to the '444 Patent at issue. (Appx721-722 ('452, col. 10:4-6; 10:43-46; and 11:29-31).) However, there was no substantive addition about how to adapt a computer to perform the recited functions, only the idea that it was possible. The patentees then added several figures of generic computer diagrams and several columns of text between the filing of the application for the '444 Patent and the applications for the '922 and '380 Patents. (*See* Appx54-75 ('922, Figs. 31-59B), Appx108-109 ('922, col. 62-64).) The patentees also added disclosure related to the operation of 3D glasses, and titled each of the asserted patents to reflect their focus on 3D "spectacles:" "Faster State Transitioning for

Continuous Adjustable 3Deeps Filter Spectacles Using Multi-Layered Variable Tint Materials." Yet the underlying action is not about optical illusions or 3D glasses; instead, VDPP contends that VIZIO's televisions infringe the asserted patents.

The district court agreed with VIZIO in its Order Regarding Claim Construction, holding that the storage and processor terms as used in the asserted patents were indefinite. (Appx8.) Specifically, the district court found that the terms should be construed as means-plus-function terms because the "asserted claims do not describe how the 'storage' or 'processor' carry out the recited functions—only that they do. Thus, they only stand to set up a black box for performance of a function without any description of how such a function is performed." (*Id.*) The district court distinguished this case from *Zeroclick*, where this Court found that the lower court's "analysis removed the terms from the context." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018). As applied to the case at hand, the district court concluded that unlike the situation in *Zeroclick*, there was no context in the claims to provide meaning for the terms at issue here. (Appx8.) Ultimately, the district court found that "[b]ecause the claimed functions of the asserted patents lack sufficient disclosure of structure for performance of the claimed methods, the Court finds that they are invalid as they are indefinite." (*Id.*)

## SUMMARY OF THE ARGUMENT

The district court correctly found that the claim terms reciting a "storage" and a "processor" "adapted to" perform a variety of functions are indefinite because the patents do not disclose any structure for performance of the claimed functions. A de novo review of the evidence confirms that the claim terms' use of the words "storage" and "processor" are nothing more than nonce words – a black box for performance of a function without description of how such a function is performed – without sufficient disclosure of structure to teach the claimed invention of "Eternalism." Based on analysis of the asserted patents and their prosecution history, VIZIO carried its burden during claim construction to demonstrate that the claim terms at issue fail to "recite sufficiently definite structure or else recite[] function without reciting sufficient structure for performing that function." *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1349 (Fed. Cir. 2015). The conclusion that the asserted claim terms are indefinite is correct and should be affirmed.

# ARGUMENT

## I. The district court correctly concluded based on intrinsic evidence that the "storage" and "processor" claim terms were means-plus-function terms that lacked sufficient disclosure of structure, rendering them indefinite.

Claim construction is a matter of law that is reviewed de novo. *Eli Lilly and Co. v. Teva Pharmaceuticals Int'l GmbH,* 8 F.4th 1331, 1340 (Fed. Cir. 2021). Whether a claim complies or fails to comply with the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a matter of claim construction that is also reviewed on appeal de novo. *Noah Systems, Inc. v. Intuit, Inc.,* 675 F.3d 1302, 1311 (Fed. Cir. 2012) (citing *S3 Inc. v. nVIDIA Corp*., 259 F.3d 1364, 1367 (Fed. Cir. 2001) (internal citation omitted)). The district court correctly determined that the "storage" and "processor" claim terms function as "means" terms for performance of recited functions and that they lack sufficient disclosure of structure, rendering them indefinite.

### A. The terms "storage" and "processor" are generic computer terms that do not convey specific structure for performance of the recited functions.

There is a rebuttable presumption that claim terms that do not use the word "means" are not means-plus-function terms. *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1348 (Fed. Cir. 2015). However, this presumption may be overcome when generic terms are "used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite

structure.'" *Id.* at 1350 (noting "[g]eneric terms such as 'mechanism,' 'element,' 'device,' and other nonce words [] reflect nothing more than verbal constructs …"). "When a claim term lacks the word 'means,' the presumption can be overcome and [§ 112(f)] will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 1349.

The generic computer terms "storage" and "processor" as used in the claims of the asserted patents are nonce words that substitute as a "means" for performance of recited functions. *See, e.g., HTC Corp. v. IPCom GmbH & Co., KG,* 667 F.3d 1270, 1280 (Fed. Cir. 2012) ("disclosure of a processor and transceiver alone was [not] sufficient to provide structure to these claims. The processor and transceiver amount to nothing more than a general-purpose computer."); *GoDaddy.com, LLC v. RPost Commc'ns Ltd.,* No. CV-14-00126-PHX-JAT, 2016 WL 212676, at *56 (D. Ariz. Jan. 19, 2016) (finding "processor" subject to interpretation as means-plus-function because "the claimed 'processor' and other claim language does not convey to a skilled artisan anything about the internal components, structure, or specific operation of the processor"), *aff'd,* 685 F. App'x 992 (Fed. Cir. 2017); *see also Farstone Tech., Inc. v. Apple Inc.*, 2015 WL 5898273, *3–4 (C.D. Cal. Oct. 8, 2015) (finding "processing system" subject to interpretation as means-plus-function).

Relying on the intrinsic evidence of the asserted patents, the district court concluded that “the asserted claims do not describe how the ‘storage’ or ‘processor’ carry out the recited functions—only that they do. Thus, they only stand to set up a black box for performance of a function without any description of how such a function is performed.” (Appx8.) The district court agreed with VIZIO that “storage” and “processor,” as used in the asserted patents, were nothing more than generic words that stand in as “means” terms to perform recited functions, and accordingly construed the terms as means-plus-function. The district court met its burden during claim construction when it concluded that the presumption for terms not involving the word “means” was rebutted and that claim terms “storage” and “processor” properly invoked Section 112, para. 6. (Appx8.)

In its opening brief, VDPP does not proffer evidence beyond the claim language itself that would denote any specific structure for the “storage” or “processor.” Instead, VDPP claims that the district court erred by failing to apply the ordinary meaning of the terms, arguing that the terms themselves connote structure and that the district court failed to read the terms in view of the intrinsic record. (Appellant’s Br. 9-10, 13.) VDPP argues without evidence that one of ordinary skill in the art would understand that the asserted patents would employ the claimed methods to achieve “Eternalism” by using “conventional computer

equipment." (*Id.* at 9.) But none of VDPP's arguments is supported by the intrinsic record, and they should be rejected by this Court.

The intrinsic evidence shows that there is no disclosure of a "conventional" storage or processor that could be used to achieve the functional capabilities claimed in the asserted patents. When the district court reviewed the intrinsic evidence, the court found there was no context or support for the claim terms, and further pointed to the lack of any extrinsic evidence offered by VDPP that would show what a person of ordinary skill in the art would understand the claimed "storage" or a "processor" to be. (Appx8.) VDPP's brief cites extensively from the specification, but VDPP fails to connect any of that verbiage to the functions called out in the asserted claims. The district court correctly concluded that the asserted patents "lack sufficient disclosure of structure for performance of the claimed methods." (Appx8.)

VDPP next argues that the district court erred by "repeat[ing] the same error that this court had reversed in *Zeroclick*" and finding the case inapposite. (Appellant's Br. 12.) However, in *Zeroclick*, the Federal Circuit found that the district court failed to interpret the claim terms in the context of the claims and specification, reversing the lower court's decision. *Zeroclick LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018). The Federal Circuit determined that the context of the claims demonstrated that the claim term "program" referred to an

"existing program" and thus provided the necessary structure for that term. *Id.* That is not the case here, because the asserted claims, in contrast, do not set forth any structural description of the specialized storage and processor that is claimed other than by recitation of the functions they must perform. Nor does VDPP's brief offer any other support for the structure of the storage or processor beyond the functional language itself. As the district court in this case rightly concluded, "[n]o such context is present in the case at hand." (Appx8 (finding *Zeroclick* does not apply).)

In fact, VDPP's brief essentially admits as much. VDPP argues that storage and processor are "tools that perform the functions recited in the claims." (Appellant's Br. 10.) VDPP declares that the terms are defined merely by their functions: "the claims define the 'storage' … by what it stores." Brief at 11. And "the claims define the 'processor' … by reciting how the processor manipulates image frames." *Id.* Thus, the only "context" in these claims is functional, in complete contrast to *Zeroclick.*

The words "storage" and "processor" are not disclosed at all in the underlying provisional application to which VDPP asserts priority for the asserted patents. They appear for the first time in the immediate predecessor of the '444 Patent (U.S. App. No. 14,850 750, filed September 10, 2015, and issued as U.S. Patent No. 9,426,452 (Appx686.).) and appear as nominal, redundant recitations in

the "Summary of the Invention" section of the '452 Patent specification; these same nominal recitations, which do no more than paraphrase the claims, are found in the asserted '444 Patent as well. (Appx172-173 ('444, col. 10:18-21; 10:58-61; 11:42-46; 11:58-61).) Otherwise, the specification of the '444 patent refers to "storage" solely in relation to synchronization signals—not in connection with storage of video or image frames. (Appx23 ('444, col. 23:29-30).) The '444 Patent is completely devoid of any description of structure that performs the recited functions.

The asserted claims of the '444 Patent provide a list of functions for the storage and processor: (1) storage of image frames; (2) obtaining images frames from a video stream; (3) expansion of an image frame to generate a modified image frame; (4) generation of a bridge frame; (5) blending the modified image frame and bridge frame and (6) display of the modified image frame and bridge frame. But the specification for the '444 Patent does not describe structure for a storage and a processor for performance of these functions. At most, the specification, like the claims, only says that the functions are performed—not how the storage or processor are "adapted to" perform them.

The '922 and '380 Patents suffer from the same deficiencies. The '922 Patent is based on a continuation-in-part application filed on May 26, 2017 that added several figures of generic computer diagrams and several columns of text to

the disclosure of the ’444 Patent. (Appx54-75 (’922, Figs. 31–59B), Appx108-109 (’922, col. 62–64).) The ’380 Patent shares this additional disclosure. (Appx229-252 (’380, Figs. 31–59B), Appx283-284 (’380, col. 62–64).) Since VDPP contends the entirety of the ’922 and ’380 Patents are entitled to priority to the provisional application filed on January 23, 2001 (Appx743.), these late additions to the asserted patents cannot be relied upon to support the claimed storage and processor. *See, e.g., Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167–68 (Fed. Cir. 2004) (District court erred in considering new-matter content of a related patent as part of the intrinsic record for the patent at issue); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09–290, 2010 WL 3937157, at *25 n. 14 (W.D. Pa. Oct. 1, 2010); *In re Certain Rubber Antidegradants,* No. 337-TA-533, 2008 WL 1727623, at *11 (Int’l Trade Comm. 2008)(finding that relying on additional disclosure in a CIP that qualifies as new matter to construe the claims of a parent patent is improper and “would effectively treat the new matter in a CIP application as if it were present in the ancestor application, a contradiction of the very definition of a CIP application”). Moreover, the additional material still fails to recite sufficient structure for performance of the functions recited in the asserted claims of the ’922 and ’380 Patents. The added figures only refer to the processor and storage as no more than mere “black boxes,” with no description of their structure or operation to perform each of the functions recited in the asserted

claims of the ’922 and ’380 Patents. (*See, e.g.*, Appx54 (’922, Fig. 31), Appx58 (’922, Figs. 36), Appx75 (’922, Fig. 57); Appx229 (’380, Fig. 31), Appx233 (’380, Fig. 36), Appx250 (’380, Fig. 57).) The flow charts are no more than recitation of the functions—they do not disclose a structural algorithm for performance of the functions, *i.e*., a description of how the function is achieved. (Appx55 (’922, Fig. 32), Appx75-76 (’922, Figs. 58–59B), Appx230 (’380, Figs. 32), Appx250-251 (’380, Figs. 58–59B).) Thus, there is no disclosure of structure sufficient to teach the scope of the claims.

VDPP cites to *Nevro* for the proposition that Section 112 concerns are not raised where claims utilize functional language. *(See* Appellant’s Br. 11, citing *Nevro Corp. v. Boston Scientific Corp.*, 955 F.3d 35, 39 (Fed. Cir. 2020).) However, that case involved use of a functional term as an adjective modifying an indisputably structural term – “signal” – and the quote VDPP offers does not relate to a means-plus-function analysis. Moreover, this Court noted in *Nevro* that where a claim limitation is defined in purely functional terms, “a determination of whether the limitation is sufficiently definite is ‘highly dependent on context (e.g., the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area).” (*Nevro,* 955 F.3d at 39.) In finding that the claim term at issue was not indefinite, the court in *Nevro* relied on undisputed facts about what a skilled artisan would be able to determine as to the functional limitations of the

claimed system, as well as other disclosures in the specification that provided further limitations to scope of the term. (*Id.*) That is not the case here. First, there is no disclosure in the specification or the claims of the structure of the claimed "storage" or "processor," and, second, as the district court noted in its order, VDPP did not proffer any expert testimony about what a person of ordinary skill in the art would understand about the meaning of the claimed "storage" and "processor" "adapted to" perform the claimed list of functions. There is no guidance from the intrinsic evidence regarding the claim terms at issue. Thus, *Nevro* is not instructive here.

VDPP also argues that the processor and storage of the asserted patents are merely "conventional computer equipment." (Appellant's Br. 10; *see also Id.* at 8, 11). But this Court is clear that simple reference to generic or general-purpose computers does not suffice. *See Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("For a patentee to claim a means for performing a particular function and then to disclose only a general-purpose computer as the structure designed to perform that function amounts to pure functional claiming.") "Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the

function." *Id*. (quoting § 112). *See also HTC Corp. v. IPCom*, 667 F.3d at 1280 ("Rather than relying on the processor and transceiver, IPCom had to identify an algorithm that the processor and transceiver execute. … The specification had to disclose that algorithm to one of skill in the art. And, it had to do more than parrot the recited function; it had to describe a means for achieving a particular outcome, not merely the outcome itself." (citations omitted)).

*Williamson* and *Konami* similarly found insufficiently disclosed structure to claimed processing components to perform recited functions. In *Williamson*, the patentee argued that reference to a general-purpose computer or disclosures in the specification reciting the functions provided sufficient structure for the claims. 792 F.3d at 1352–53. This Court disagreed, noting that special functions require "more than simply a general-purpose computer or microprocessor," and that general references to a claimed function in the specification are not "an algorithm for performing the claimed functions." *Id*. Similarly, in *Konami*, the court noted that "Konami's patents teach a processor that performs computer functions like 'initiating' a game and 'determining' symbols, but they provide no information about how that processor is programmed to carry out these functions or how it is configured to interact with other parts of the machine to operate. And that is exactly the sort of 'black box' means claiming that *Williamson* warned of." *Konami Gaming, Inc. v. Marks Studios, LLC*, No. 2:14-cv-01485, 2017 WL

3174905, *6 (D. Nev. Jul. 25, 2017). Thus, in both *Williamson* and *Konami,* the claims were found invalid because the specifications for the underlying patents failed to disclose sufficient structure for the performance of the claimed functions. *Id*. at *7–8; *Williamson*, 792 F.3d at 1354.

This Court addressed this same issue again earlier this year, and found that the claim term “user identification module” was a means-plus-function term subject to § 112, para. 6. *Rain Computing, Inc. v. Samsung Electronics America, Inc.*, 989 F. 3d 1002, 1006 (Fed. Cir. 2021), *cert. denied*, 2021 U.S. LEXIS 5203 (Oct. 12, 2021). There, the claim’s use of the word “module” was the same black box recitation of structure found in *Williamson* and the claim language did not provide any structure for performing the claimed function. *Id.* at *2-*3 (citing *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech*., 521 F.3d 1328, 1333 (Fed. Cir. 2008) and *WMS Gaming, Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1349 (Fed. Cir. 1999)). The specification did “not impart any structural significance to the term” and “[did] not even mention a ‘user identification module.’” *Id.* The Court rejected plaintiff’s argument and found that the term was a means-plus-function term.

Similar to the Court’s analysis in *Rain Computing,* the asserted patents here only use “storage” and “processor” as black box recitations of structure; they do not disclose or describe any specialized device that is able to perform the complex

and specific functions that are set forth in detail in the asserted claims, nor do they disclose an algorithm that the storage or processor perform.

The district court met its burden to find that the presumption involving functional terms that do not contain the word "means" was rebutted and correctly rejected VDPP's argument that there was sufficient disclosure of structure for the claim terms "storage" and "processor." The district court's order and findings should be affirmed.

## II. The district court did not impose a burden on VDPP to provide expert testimony.

VDPP argues that the district court erred by placing the burden on VDPP to support what a "storage" and "processor" are. (Appellant's Br. 14.) But, this misstates the district court's findings. In its order, after finding that the terms "storage" and "processor" were surrogates for means terms and that the intrinsic evidence did not provide any context to the terms, the district court noted that "VDPP offers no expert evidence regarding what the ordinary meaning [of the claim terms] is." (Appx8.) The district court did not indicate that VDPP was required to provide any expert testimony, just that it had not done so. This statement is true, and reliance on expert evidence, if any, is within the discretion that is afforded to the district court; a district court "has discretion to take expert testimony into account in determining the ordinary meaning of a claim term to one skilled in the art." *IQASR LLC v. Wendt Corp.* 825 Fed. Appx. 900, 903 (Fed. Cir.

2020) (citing *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1331 (Fed. Cir. 2012). The district court was merely noting that no expert testimony was presented. VDPP's argument that an additional burden was placed on it by the district court is unfounded.

## CONCLUSION

VIZIO respectfully submits that the order of the district court finding the claim terms "a storage adapted to [perform the recited functional limitations]" and "a processor … adapted to [perform the recited functional limitations]" as used in claims 1 and 27 of U.S. Patent 9,699,444, claim 2 of U.S. Patent 9,948,922, and claim 6 of U.S. Patent 10,021,380 are indefinite should be affirmed. Likewise, the judgment holding the '380 Patent; '444 Patent; and '922 Patent invalid as indefinite under 35 U.S.C. § 112, should also be affirmed.

Respectfully submitted this 29th day of October, 2021.

by: */s/ Charles S. Barquist*

CHARLES S. BARQUIST
**MASCHOFF BRENNAN**
300 South Grand Avenue, Suite1400
Los Angeles, CA 90071
Telephone: (949) 202-1900

ERYNN L. EMBREE
**MASCHOFF BRENNAN**
100 Spectrum Center Dr., Suite 1200
Irvine, CA 92618
Telephone: (949) 202-1900

*Attorneys for Defendant-Appellee* VIZIO, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021 an electronic copy of the foregoing **[CORRECTED] BRIEF OF DEFENDANT-APPELLEE VIZIO, INC.** was filed electronically with the U.S. Court of Appeals for the Federal Circuit by means of the Court's CM/ECF system and thereby causing a "Notice of Electronic Filing" to be served on all counsel of record.

Date: October 29, 2021

*/s/ Charles S. Barquist*
Charles S. Barquist

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this document contains 5559 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: October 29, 2021

*/s/ Charles S. Barquist*
Charles S. Barquist